IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA S. HAMPTON,<br><br>        Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No.: 1:10-cv-00884 JLT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF DEBRA S. HAMPTON |

Debra S. Hampton ("Plaintiff") asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in evaluating her testimony regarding excess pain and in assessing her mental limitations. Therefore, Plaintiff seeks judicial review of the administrative decision denying her claim. For the reasons set forth below, Plaintiff's social security appeal is **DENIED**.

## PROCEDURAL HISTORY[1]

Plaintiff filed an application for disability insurance benefits on November 23, 2007, alleging disability beginning August 1, 1995. AR at 111. The Social Security Administration denied her claim on March 11, 2008, and upon reconsideration denied the claim again on June 6, 2008. *Id.* at

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

67, 76. Plaintiff requested a hearing to challenge the denial of benefits. The hearing occurred on July 14, 2008 before an ALJ, who determined Plaintiff was not disabled, and issued an order denying benefits on January 5, 2010. *Id.* at 9-16, 201.

Plaintiff requested review of the ALJ's decision by the Appeals Council of Social Security. AR at 1-3. On March 15, 2010, the Appeals Council upheld the ALJ's decision. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, as "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under Title XVI of the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered disabled only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990); *see also* 20 C.F.R. § 416.912 ("In general, you have to prove to us that you are blind or disabled."). When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 416.920(a) (2010). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity[2] to perform to past relevant work[3] or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 416.927, 416.929.

A.   Relevant Medical Evidence

On September 16, 2005, Plaintiff received treatment from Dr. Shahzad Jahromi at Kaiser Permanente. AR at 331. Plaintiff reported that she had injured her lower back at work on September 9, 2005. *Id.* After examining Plaintiff's back, Dr. Jahromi observed:

> There is no erythema, warmth, or deformity. [Patient] has normal gate and toe/heel walk and squats without difficulty. There is no paraspinal tenderness but [right sacroiliac] joint is tender to touch. Flexion and extension of the lumbar spine is [within normal limits]. Lateral flexion of the lumbar spine is [within normal limits, bilaterally].

*Id.* In addition, Plaintiff's strength was 5/5 bilaterally. *Id.* Dr. Jahromi diagnosed Plaintiff with a low back sprain, and noted that Plaintiff did not want work restrictions. *Id.* Therefore, Dr. Jahromi

---

[2] The residual functional capacity is what a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[3] Past relevant work is work that a claimant has done "within the last 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1).

opined Plaintiff could return to work "with no restrictions." *Id.* Plaintiff returned to Dr. Jahromi on September 23, 2005, and he noted that she "[a]ppears to be in some discomfort especially with movement." AR at 329. Plaintiff walked with a slow, calculated gait and was unable to squat due to pain. *Id.* Dr. Jahromi adjusted her work restrictions to lifting and carrying up to 10 pounds; no bending; and occasional twisting, squatting, or kneeling. *Id.* at 330. Dr. Jahromi ordered an x-ray of Plaintiff's lumbar spine, which was taken on October 3, 2005. *Id.* at 203. Dr. Titus Koenig interpreted it, and found "no significant loss of disc height" or "significant degenerative changes." *Id.* Dr. Koenig noted the disc space at L5-S1 was not well-defined, and opined that it could be due to technique or it could represent discitis. *Id.*

Dr. Jahromi opined Plaintiff was "very slowly improving" on October 17, 2005. AR at 280. Plaintiff walked with a normal gait, and was able to walk on her toes/heels and squat without difficulty. *Id.* Plaintiff called the clinic on October 27, 3005, to request stronger medication because Vicodin was not helping. *Id.* at 270. Plaintiff returned on October 31, 2005, and said that over the weekend she "moved wrong" and felt pain and numbness in her legs, which had resolved prior to her appointment. *Id.* at 264. Again, Plaintiff requested stronger medication. *Id.* Dr. Jahromi noted Plaintiff did "not seem to be in any distress while sitting," though she exhibited "[s]ome discomfort with movements." *Id.* Plaintiff's strength was 5/5, but she was "unable to raise her [right] leg while lying due to pain in her [right] lower back." *Id.*

On November 15, 2005, Plaintiff reported "she feels about the same with not much improvement" and estimated her pain was "about 9/10." AR at 255. Also, Plaintiff reported that she had difficulty lifting and carrying items due to her pain. *Id.* Plaintiff requested more narcotics, and claimed she took two tablets of Vicodin 10/605 at least three times daily. *Id.* Dr. Jahromi told her this was twice the maximum daily dose, and Plaintiff should have run out of medication. *Id.* Plaintiff responded that she did not take the medication "all the time" because it made her too drowsy, so sometimes she would "lay down [and] cry from pain." *Id.* She was able to walk with a normal gait; walk on her toes and heels; and squat without difficulty. *Id.* Dr. Jahromi observed Plaintiff "does not seem to be in any distress or pain especially when she reports pain scale of 9/10." *Id.* Further, Dr. Jahromi noted:

> [Patient] claims that she is in as much pain today as she was after her injury (over 2 [months] ago). Clinically she doesn't show that. Her exam has improved with no radicular signs [and] she looks comfortable [and] in no acute distress. She is always requesting more narcotics. This [patient] needs to be closely monitored since she is stating that she knows she won't be returning to her job. She has had previous back injuries but it is obvious that she is trying to take advantage of her current situation.

*Id.* at 256. Dr. Jahromi expressed a belief that Plaintiff may have an opioid addiction, and recommended that she "be referred to pain management to get a better control of her pain and opioid intake." *Id.* at 257.

In February 2006, Dr. Jahromi changed Plaintiff's lifting restrictions to 25 pounds, again observing Plaintiff was able to walk with a normal gait; walk on her toes and heels; and squat without difficulty. AR at 228-29. Dr. Tan interpreted images of Plaintiff's lumbar spine to be "unchanged" from October 2005 with "[c]onsiderable narrowing of the L5-S2 disc space with mild discogenic sclerosis noted." *Id.* at 202, 237. At appointments in March and May, Plaintiff was able to walk with a normal gait and on her heels and toes, though Dr. Jahromi noted her strength had decreased "most likely due to lack of effort" in March. *Id.* at 189, 239-40.

On August 30, 2006, Plaintiff complained she was "[u]nable to sit too long and . . . [had] to find a comfortable position all the time." AR at 182. Plaintiff told Dr. Jahromi that her "[right] knee gives out at times," which Plaintiff attributed to her back injury. *Id.* Further, Plaintiff reported "pain shooting down her posterior [right] leg going down to her calf." *Id.* Plaintiff walked with a "slow gait . . . and when she was asked to walk on her toes, she screamed stating that her [right] knee hurt." *Id.* Plaintiff was able to stand on her toes, heels and squat. *Id.* Dr. Jahromi opined Plaintiff's knee pain was not related to her back. *Id.* Further, Dr. Jahromi denied Plaintiff's request for more Vicodin, because "upon reviewing her medication profile she has received 80 tablets in the past 30 days." *Id.* at 182. Similarly, Plaintiff's requests for more Vicodin were denied in October and November 2006. *Id.* at 174, 180.

Dr. Jahromi believed Plaintiff had reached her maximum medical improvement on February 14, 2007. AR at 173. He denied Plaintiff's request for more Vicodin, and recommended a qualified medical examiner for further treatment, or an impairment rating associated with her worker's compensation claim. *Id.* Dr. Jahromi opined Plaintiff could return to work with lifting restrictions,

but Plaintiff was "off work since her injury since the employer does not accommodate [patient's] duty restrictions. *Id.* at 174.

      Dr. Abbas Mehdi conducted an orthopedic consultation of Plaintiff on February 15, 2008. AR at 388-91. Plaintiff complained of having low back pain for two years, and stated she had been told that she had a bad back. *Id.* at 388. Plaintiff reported constant pain that increased with activity and decreased with rest. *Id.* She did not have weakness or numbness. *Id.* Dr. Mehdi observed Plaintiff "walks without evidence of a limp." *Id.* at 389. On examination, the contour, curvature and alignment of Plaintiff's cervical spine was normal, and its range of motion was within normal limits. *Id.* Likewise, tests of Plaintiff's lower extremities (including her hips, knees, and ankles) yielded results within normal limits. *Id.* at 389-90. Plaintiff's motor strength was 5/5, with normal bulk and tone. *Id.* at 390. Dr. Mehdi found "no evidence of joint pain, swelling, tenderness, or inflammation" and "no evidence of gross deformities, sublaxation, contractures or ankyloses." *Id.* at 390. Dr. Mehdi noted Plaintiff "refused to do a range of motion of the lumbar spine," which he found was "supple" without spasms. *Id.* at 389. Dr. Mehdi determined Plaintiff suffered from "likely mechanical low back pain" and offered the following functional capacity assessment: "The claimant can lift and carry 50 pounds occasionally and 20 pounds frequently. The claimant can stand and walk six hours out of an eight hour day with normal breaks." *Id.* at 390. In addition, Dr. Mehdi concluded Plaintiff could "sit without restriction" and had "[n]o exertional limitations." *Id.*

      On February 29, 2008, Dr. Elpidio A. Fonte completed a "physical residual functional capacity assessment" of Plaintiff and determined she had a lumbar strain. AR at 392-98. Dr. Fonte opined Plaintiff could lift and/or carry twenty-five pounds frequently and fifty pounds occasionally; stand and walk with normal breaks for a total of about six hours in an eight-hour day; and sit with normal breaks for a total of about six hours. *Id.* at 393. Plaintiff's ability to push and pull was unlimited. *Id.* Dr. Fonte determined Plaintiff did not have postural, manipulative, visual, communicative, or environmental limitations. *Id.* at 393-95.

      Dr. Ian Ocrant completed a case analysis on June 3, 2008. AR at 399. Dr. Ocrant stated an x-ray dated February 2006 showed "significant disc narrowing L5-S1 which established the [medically determinable impairment] of [degenerative disc disease]." *Id.* However, he believed

Plaintiff's credibility was tainted by a lack of cooperation with the consultative examiner. *Id.* Dr. Ocrant affirmed Dr. Fonte's assessment "as written." *Id.*

In August 2008, Plaintiff began to receive treatment at the University Medical Center. AR at 432. On August 14, 2008, Dr. Chunxia Li completed a "General Relief" form regarding Plaintiff's ability to work. *Id.* at 400-01. On the check-box form, Dr. Li indicated Plaintiff had a "physical . . . incapacity that prevents or substantially reduces [her[ ability to engage in work," and noted Plaintiff's low back pain resulted in default standing up, kneeling, and lifting. *Id.* at 400. On the other hand, Dr. Li did not indicate Plaintiff had a mental incapacity, and she did not believe Plaintiff needed a mental health follow-up. *Id.* at 400-01. Dr. Li indicated she believed Plaintiff's physical condition was permanent. *Id.* at 401. Therefore, Dr. Li opined Plaintiff was unable work, and stated Plaintiff was "unlikely to recover sufficiently to resume work." *Id.* at 400-01.

Treatment notes from August 2008 through August 2009 demonstrate Plaintiff reported pain at a level of 9/10 or 10/10, though she also stated an acceptable level of pain was 9/10. *See, e.g.,* AR at 407-08, 419-20, 423, 427, 430. Frequently, Plaintiff requested refills of her medication. *Id.* In addition, Plaintiff opined her pain level was about 7-8 after taking Vicodin. *Id.* at 430. On August 11, 2009, Plaintiff complained of "lower pelvic pain for several weeks" and "[left] knee pain for several months when she walks." *Id.* at 407. On examination, her left knee showed no swelling, erythema or warmness, but did show tenderness. *Id.* Dr. Li completed another "General Relief" form, on which she indicated Plaintiff had a lumbar disc hernia that prevented her from working on August 11, 2009. AR at 403. Again, Dr. Li opined Plaintiff's condition was permanent. *Id.* at 404.

On September 15, 2009, Dr. Li completed a psychiatric/psychological medical source statement. AR at 435-36. Dr. Li did not describe her treatment relationship with Plaintiff, or answer how long she had treated Plaintiff. *Id.* at 435. She opined Plaintiff had the ability to relate and interact with supervisors and co-workers, but could not deal with the public. *Id.* Dr. Li did not believe Plaintiff could understand, remember, and carry out either complex or simple job instructions. *Id.* In addition, she opined Plaintiff could not maintain concentration and attention for two hour increments, or withstand the stress and pressures of an eight-hour workday. *Id.* Again, Dr. Li stated she expected the impairment to be permanent. *Id.* at 436. When asked to "comment on the

onset and history of the patient's impairment; as well as response to treatment to date," Dr. Li responded: "2005." *Id.* She did not believe Plaintiff required additional testing or evaluations. *Id.*

Plaintiff was referred from the West Fresno Clinic[4] for a psychiatric evaluation by Dr. Marina Vea on September 21, 2009. AR at 442-46. Plaintiff reported that she heard voices on and off for the past eight years. *Id.* at 443. Also, Plaintiff reported that she first saw a psychiatrist when she was thirteen years old and was given medication for depression, which decreased, though her auditory hallucinations persisted. *Id.* Plaintiff reported her depression increased in the past two years upon the death of three family members, including two uncles who died from cancer and a sister who was murdered. *Id.* Plaintiff denied any suicidal ideations, and said, "I want to see and enjoy my grandkids." *Id.* at 445. Dr. Vea diagnosed Plaintiff with a psychosis disorder, not otherwise specified; an adjustment disorder that caused Plaintiff to be depressed and anxious; and history of poly-drug abuse/dependence. *Id.* at 446. She opined that Plaintiff had a GAF score of 50. *Id.*

On September 29, 2009, Dr. Vea noted Plaintiff was depressed and had anxiety around people. AR at 440. In addition, Plaintiff reported hearing voices, including the day before her appointment, which "talks about her murdered sister." *Id.* Dr. Vea observed Plaintiff was cooperative and alert. *Id.* Plaintiff spoke in a "very low tone [of] voice," giving relevant but brief answers to questions. *Id.* Plaintiff was oriented as to person, place, and time. *Id.* Dr. Vea found Plaintiff's insight and judgment were "fair," but Plaintiff's cognition appeared "slow" and she seemed to have "low intellectual functioning." *Id.* Dr. Vea determined Plaintiff had a GAF score of 55.[5] *Id.* Although Dr. Vea found Plaintiff's lab results were within normal limits, Plaintiff requested medication. *Id.* Therefore, Dr. Vea started Plaintiff on a "low dose" of Zoloft and Abilify. *Id.*

---

[4] Treatment notes prior to the referral indicate Plaintiff received treatment from Fresno County's Department of Behavioral Health on June 11, 2009. AR at 453. There, she reported that she and her husband were homeless, she felt like she was losing her mind, and she was "[c]onstantly hearing voices." *Id.* Further, the treatment records indicate Plaintiff received treatment from the County for mental health from 1999-2001. *See id.* at 461-80.

[5] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV). A GAF score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.* at 34.

8

B.   Hearing Testimony

On October 21, 2009, Plaintiff testified at the hearing before the ALJ, at which time Plaintiff was fifty-three years old. AR at 24, 26. Plaintiff stated she was married and had five children who did not live in her home. *Id.* at 26-27. Plaintiff said she possessed a valid driver's license, but she had not driven for about three months because it was hard on her back. *Id.* at 28. When Plaintiff wanted to go somewhere, she said her husband or son would help. *Id.* Plaintiff testified that the highest grade she completed in school was the fifth grade.[6] *Id.* She had not returned to school to earn a diploma nor had she received a GED. *Id.* at 29. Also, Plaintiff testified that she had not taken any college courses or attended any vocational training. *Id.*

Plaintiff stated that her last job was as an "in-care home service" in 2005. AR at 29. According to Plaintiff, she had to lift a person "weighing like 300 some pounds or something like that," though "at times [she] had help" lifting him. *Id.* Excluding the patient, Plaintiff said the heaviest things she had to lift were groceries weighing about ten pounds, because she cooked and cleaned for the patient. *Id.* at 30. Also, Plaintiff said that she administered medications to the Plaintiff. *Id.*

Plaintiff did not feel that she could do work "eight hours a day, five days a week," because she injured her back while transferring the patient from a chair to the bed. AR at 32. Plaintiff said "[H]e fell on me and cracked my disk in my back. And he was weighing about 300 pounds by then and fell. And my knee went in too, so my knee cracked on that other side." *Id.* After this, Plaintiff said she did not return to work, and received a cash settlement in a worker's compensation case, though she could not recall the amount received. *Id.* at 32-33. Further, as part of her settlement, Plaintiff said she received future medical care for her back. *Id.* at 33.

According to Plaintiff, "on a scale of 1 to 10, 1 being the least amount of pain, and 10 being so bad you have to go to the emergency room," her back pain is on average a "10." AR at 33. She said the back pain radiated into both of her legs, and occurred more often in the three to four months

---

[6] In an undated Disability Report, Plaintiff reported that she completed the tenth grade. AR at 137. Plaintiff informed Dr. Vea that she had dropped out of school in the eleventh grade because she had to take care of her brother and sister. *Id.* at 444.

9

prior to the hearing. *Id.* at 44. Plaintiff reported her back pain affected her ability to function and that it was "devastating . . . to get groceries [and] walk." *Id.* at 35. Plaintiff said it was difficult to sit for more than "15, 20 minutes," because she would "get stiff." *Id.* Also, Plaintiff estimated the longest she could stand was ten or fifteen minutes. *Id.* at 37. At the hearing, Plaintiff had a walker with a seat, which she stated was prescribed by Dr. Li in 2009 because Plaintiff "was permanent (sic) going to be like this." *Id.* at 36-37. Plaintiff testified that before the walker she used a cane for three to four years.[7] *Id.* at 36. Plaintiff said she could not stand for a long time without the walker or a cane, and estimated she could walk about a half a block. *Id.* at 38.

Plaintiff reported taking Vicodin and Valium for her back pain, which did not take the pain away completely but made her "able to move." AR at 39. Plaintiff stated this medication made her "groggy" every time she took it, which was three times per day. *Id.* at 40. Also, Plaintiff said she had a TENS unit, but it did not help. *Id.* at 43. Plaintiff said injections helped her "straighten up," but said she was told to stop taking them "because I would be paralyzed from my waist down." *Id.* When "in too much pain," Plaintiff said she would lay down each day for about two hours a time, but not sleep. *Id.* at 40-41. She reported having a "slight stroke" on her left side in 2008 and having to go to the emergency room, where they treated her back pain with injections, and kept her for four days due to the stroke. *Id.* at 34.

In addition to her back pain, Plaintiff stated she had knee pain, bad headaches, and depression. AR at 31-32. Plaintiff said the knee pain came when she sat too long and caused her knees to get swollen, so Plaintiff elevated her legs each night. *Id.* at 44-45. Plaintiff said her pain medication for her knees was the same medication as for her back pain. *Id.* at 45. Likewise, the headaches Plaintiff said she had, but could not state how frequently, were treated with the same medication. *Id.* at 45-46.

Plaintiff said she is depressed every day because of her "traumatic pain," and her depression affects her ability to function. *Id.* at 49. Plaintiff said it affected her ability to concentrate or focus, but believed she could concentrate "two hours straight" without a break. *Id.* at 49-50. Plaintiff

---

[7] Treatment notes indicate Dr. Jahromi prescribed the cane for Plaintiff on November 27, 2006. AR at 175.

reported that about four or five months before the hearing, she began attending a program called "Blue Sky" at Fresno County Mental Health for treatment of her depression. AR at 47. Plaintiff said she went "five days out of a week, from 8:00 to 5:00" to Blue Sky, where she would see a counselor and go to classes. *Id.* at 47-48. Plaintiff stated she did not have any social activities in which she participated, other than going to Blue Sky. *Id.* at 48-49.

Vocational expert ("VE") Cheryl Chandler testified at the hearing after Plaintiff. The VE characterized Plaintiff's past relevant work as an in-home care provider as "SVP 3, medium, and "a very low level of semi-skilled" work. AR at 52. Consequently, the VE opined transferability to other job positions was not possible because the work was too unique. *Id.*

## C. The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her application date October 30, 2007. AR at 11. Second, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, depression, and anxiety. *Id.* In determining the effects Plaintiff's mental impairments, the ALJ concluded Plaintiff had mild restrictions with activities of daily living; mild difficulties in social functioning; and moderate difficulties with regard to concentration, persistence, or pace. *Id.* at 12. Therefore, Plaintiff had no impairment, or combination of impairments, that met or medically equaled a listing. *Id.* at 11.

At the fourth step, to determine Plaintiff's residual functional capacity ("RFC"), the ALJ considered "the entire record." AR at 12. The ALJ determined Plaintiff "has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c). She can lift and carry 50 pounds occasionally and 25 pounds frequently; stand or walk 6 hours, and sit 6 hours, in an 8-hour workday; and perform simple, repetitive tasks." *Id.* The ALJ determined Plaintiff was not capable of performing past relevant work. *Id.* at 15. However, the ALJ found the limitations of Plaintiff's RFC "have little or no effect on the occupational base of unskilled medium work." *Id.* Thus, the ALJ concluded Plaintiff "has not been under a disability . . . since October 30, 2007, the date she applied for supplemental security income." *Id.* at 16.

///

**DISCUSSION AND ANALYSIS**

Plaintiff argues the ALJ failed to assess her "excess pain" in a proper manner under Social Security Ruling 96-7p.[8] In framing the issue in this manner, it appears that Plaintiff is complaining that the ALJ improperly rejected her testimony regarding her subjective complaints. *See,* SSR 96-7p, 1996 SSR LEXIS 4, at*1 ("The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain . . . requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects . . ."). Further, Plaintiff argues the ALJ failed to properly assess her mental limitations. (Doc. 15 at 12).

A.   The ALJ discounted Plaintiff's testimony regarding excess pain in a proper manner.

In determining credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007), quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991). Here, the ALJ found Plaintiff's "medically-determinable impairments can reasonably be expected to cause the alleged symptoms." AR at 13. However, the ALJ determined Plaintiff lacked credibility with her statements about the "intensity, persistence, and limiting effects" of her symptoms. *Id.* Plaintiff asserts, "The ALJ failed to articulate legally sufficient reasons for rejecting the testimony" regarding her pain. (Doc. 15 at 11).

1.   Findings of the ALJ

An adverse finding of credibility must be based on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ may not discredit a claimant's testimony as to the severity of symptoms only because it is unsupported by objective medical evidence. *See Bunnell*, 947 F.2d at 347-48. In addition, the ALJ "must identify what testimony is not credible and what evidence undermines the

---

[8] Rulings are issued by the Commissioner to clarify regulations and policies. Though they do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

12

claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Here, the ALJ found Plaintiff's subjective complaints were unsupported by the objective medical evidence, her pain was managed by medication, and Plaintiff "had more than a passing interest in pain medications." AR at 13-14.

*Objective medical evidence*

Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barchart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence").

Here, the ALJ did not base his decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Instead, the objective medical evidence was a relevant factor in determining Plaintiff's credibility. However, in citing to the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the claimants are not credible." *Dodrill*, 12 F.3d at 918; *see also Holohan*, 246 F.3d at 1208 (requiring the ALJ to

"specifically identify the testimony she or he finds not to be credible" and point to evidence that undermines the claimant's testimony ).

The ALJ observed Plaintiff had "consistently received treatment since 2005 from doctors who . . . are skeptical of her claims." AR at 13. In addition, the ALJ noted, "The record is replete with Ms. Hampton's subjective complaints that are unsupported by objective evidence." *Id.* For example, the ALJ noted that though Plaintiff claimed debilitating pain, her treating physician (Dr. Jahromi) released Plaintiff to work shortly after her injury date with lifting restrictions, and subsequently allowed Plaintiff "to lift and carry at least 20 pounds with few, if any, other restrictions." *Id.* at 14. Likewise, the ALJ noted Dr. Mehdi, the consultative examiner, "reported a normal examination and diagnosed only low back pain that was likely mechanical low back pain," with which Plaintiff could "lift and carry 50 pounds occasionally and 25 pounds frequently with no other limitations." *Id.* Therefore, the objective medical evidence was a proper consideration by the ALJ in determining Plaintiff's credibility.

*Conservative treatment*

The ALJ noted also Plaintiff was treated "with medication management and physical therapy" by Dr. Jahromi, and that the records from Dr. Li "show medication management for chronic back pain." AR at 14. The amount of treatment Plaintiff received is a permissible consideration in credibility findings. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Torrence v. Astrue*, 2010 U.S. Dist. LEXIS 128618, at * 28 (E.D. Cal. Nov. 24, 2010) (in determining whether the claimant's testimony regarding her pain was credible, the ALJ considered properly that "the treatment notes 'show only medication management' for Plaintiff's symptoms"). Moreover, a condition that can be adequately controlled with medication and conservative treatment cannot be the basis of a claim for disability benefits. *See Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"). Therefore, the medication management of Plaintiff's pain was clear and convincing reasons for finding Plaintiff's subjective complaints lacked credibility.

*Opinions of physicians regarding disability*

Another reason set forth by the ALJ in discounting Plaintiff's testimony was that "nowhere does the treating physician say Ms. Hampton cannot work." AR at 14. Plaintiff argues this statement is incorrect:

> The ALJ would have to ignore the statements of Dr. Li and Dr. Jahromi for that to be true. Dr. Li states that Hampton is not able to work because she has difficulty in bending, standing up and lifting. (A.R. 401-404). Dr. Jahromi specifically states that Hampton has a "very poor prognosis of returning to full duty." (A.R. 182). Dr. Li agrees and states that Hampton is unable to work and "unlikely to recover sufficiently to return to work." (A.R. 401-404).

(Doc. 15 at 9). Therefore, Plaintiff argues this was not a clear and convincing reason supporting the credibility determination. *Id.* at 10.

Notably, the ALJ referred to Dr. Jahromi, who was the treating physician who made the statement regarding Plaintiff's poor prognosis for returning to her prior position as an in-home support service provider. *See* AR at 14, 182. However, as discussed above, Dr. Jahromi believed Plaintiff *could work* with lifting restrictions. *See, e.g., id.* at 183. In particular, on February 14, 2007, Dr. Jahromi opined that Plaintiff could return to work with lifting restrictions, but noted that Plaintiff was "off work since her injury since the employer does not accommodate [patient's] duty restrictions. *Id.* at 174. Further, despite Plaintiff's argument related to Dr. Li, the ALJ rejected the Dr. Li's opinion and Plaintiff does not challenge this determination.[9] *Id.* at 14.

Nevertheless, determining whether a claimant is disabled is an ultimate issue that is reserved to the Commissioner. 20 C.F.R. § 416.927(e). An ALJ is not a robot, parroting back the conclusions of others. Instead, the ALJ is charged with the duty to formulate his own conclusion regarding disability. Whether a doctor concludes or does not conclude that a claimant is disabled is irrelevant; instead, the facts, observations and opinions of the doctors that support this conclusion

---

[9] The ALJ rejected Dr. Li's opinion because it was given "without any rationale or supporting medical documentation." AR at 14. In addition, the ALJ noted the "medication management" and treatment Plaintiff received. *Id.* These are specific, legitimate reasons for rejecting the opinion of a treating physician. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9 th Cir. 1989) (an ALJ may reject a treating physician's opinion that is "conclusory and brief" and lacks support of clinical findings); *Nocola v. Astrue*, 2010 U.S. Dist. LEXIS 42099, at *22 *(E.D. Cal. April 29, 2010) ("a conservative course of treatment relative to a finding of total disability is a proper basis for discounting the extreme restrictions reported by a treating physician").

should be the ALJ's focus. Thus, the ALJ erred in relying upon the doctor's mere conclusion that Plaintiff was not disabled when evaluating Plaintiff's symptom testimony.

*Interest in pain medication*

Finally, the ALJ determined Plaintiff "had more than a passing interest in pain medications." AR at 13. Such behavior is a proper factor in a credibility determination. *See Gray v. Comm'r of the Soc. Sec. Admin.*, 265 Fed. App'x. 60, 63 (9th Cir. 2010) (it was a clear and convincing reason to reject a claim of severe pain when "physicians commented that [the claimant's] claims of pain appeared to be the result of drug-seeking"). Previously, this Court determined that where substantial evidence supported an ALJL's finding that the claimant engaged in drug-seeking behavior, this finding "further undermines her credibility regarding her symptoms." *Halford v. Astrue*, 2011 U.S. Dist. LEXIS 37241, at * 24 (E.D. Cal. Mar. 29, 2011).

Here, as the ALJ noted, Plaintiff requested Vicodin on several occasions, but the requests were denied "because her doctor though[t] her request for it 'inappropriate.'" AR at 13; *citing* AR at 173,182-83, 207, 356, 365, 270. In October 2005, Dr. Jahromi opined Plaintiff was "trying to take advantage of her current situation" and believed she had developed an addiction to her pain medication. *Id.* at 256-57. Plaintiff periodically requested more Vicodin for her pain, and Dr. Jahromi frequently denied these requests. For example, on August 30, 2006, Dr. Jahromi denied her request because "upon reviewing her medication profile she has received 80 tablets in the past 30 days." *Id.* at 182. On November 21, 2006, Dr. Jahromi noted that Plaintiff's exam was "for the most part normal" but she continued to request Vicodin. *Id.* at 176. He refused her request for a medication refill, finding that it was not appropriate. *Id.* Similarly, on February 14, 2007, Dr. Jahromi noted, "She continues to request Vicodin for pain which I don't think is appropriate." *Id.* at 173. Therefore, the ALJ's finding was supported by substantial evidence in the record, and was a clear and convincing reason for rejecting Plaintiff's testimony.

2. Reliance on an invalid reason

When an ALJ sets forth a reason for an adverse credibility finding that is not supported by the record or is legally insufficient, the Court must consider whether the reliance on invalid reasons was a harmless error. *See Batson*, 359 F.3d at 1195-97 (applying a harmless error standard where the

16

credibility finding was invalid). The Ninth Circuit stated, "So long as there remains 'substantial evidence supporting the ALJ's conclusion's on credibility' and the error 'does not negate the validity of the ALJ's ultimate credibility conclusion,' such [error] is deemed harmless." *Carmickle*, 533 F.3d at 1162, quoting *Batson*, 359 F.3d at 1197. Here, as noted above, the ALJ relied improperly on the fact that Plaintiff's treating physician did not opine that Plaintiff could not work. However, as discussed above, the remaining reasons outlined by the ALJ for finding Plaintiff's symptom testimony to be incredible, are supported by substantial evidence in the record. Therefore, the ALJ's partial reliance upon an invalid reason was a harmless error.

B.   The ALJ did not have a duty to develop the record regarding Plaintiff's mental limitations.

Plaintiff argues the ALJ had a duty to develop the record with regard to Plaintiff's mental limitations. (Doc. 15 at 12-13). The law is well-established in this Circuit that the ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). However, the law imposes a duty on the ALJ to develop the record in only some circumstances. 20 C.F.R. § 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, re-contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination). The duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see* 20 C.F.R. § 416.912(e).

On the other hand, the ALJ has a heightened duty to develop the record when the claimant is mentally ill, because such claimants may not have the capacity to provide the ALJ with the necessary information. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Plaintiff argues, "[T]here is nothing but the ALJ's own opinion as to Hampton's mental impairment after June 2009. The regulations require further development of the severity of Hampton's mental impairment and the failure to do so is error." (Doc. 21 at 6). Plaintiff asserts the ALJ had a duty to develop the record by recontacting Dr Li, asking Dr. Vea for a medical source statement, ordering a consultative examination, or seeking review by a nonexamining psychologist or psychiatrist. *Id.*

An ALJ "has broad latitude in ordering a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001), quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). Prior to ordering a consultative examination, the ALJ considers a number of factors, including the medical evidence and the claimant's allegations. 20 C.F.R. § 416.919a. The ALJ is required to seek additional information from a treating physician when a report contains a "conflict or ambiguity that must be resolved" prior to the disability determination. 20 C.F.R. § 416.912(3)(1).

Here, the ALJ held the record open to receive records of Plaintiff's treatment for mental health. *See* AR at 437. The ALJ noted Plaintiff was diagnosed with a psychotic disorder not otherwise specified, and "the most recent records show medication management only." *Id.* at 14, citing AR at 452, 477. Further, the ALJ considered Plaintiff's testimony regarding the effect of her impairments. *See* AR at 12. As a result, the ALJ determined Plaintiff had mild restriction in activities of daily living; mild difficulties in social functioning; and moderate difficulties with regard to concentration persistence, or pace. AR at 12. Notably, Plaintiff did not testify that her mental problems were debilitating; Plaintiff believed her depression affected her ability to concentrate only, but she said she could concentrate for two hours. *Id.* at 12, 49-50. With the evidence from Dr. Vea and Plaintiff's testimony regarding her abilities, there were no conflicts or ambiguities to be resolved nor was the record incomplete or insufficient to make a disability determination. Therefore, the ALJ's duty to develop the record was not triggered. *See Thomas v. Barnhart*, 278 F.3d 947, 978 (9th Cir. 2002) (duty not triggered when the ALJ did not conclude the medical report was inadequate to make a disability determination); *Mayes*, 276 F.3d at 459-60.

## **CONCLUSION**

For all these reasons, the Court concludes the ALJ set forth clear and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff's testimony regarding her "excess pain." Furthermore, the ALJ did not have a duty to develop the record as to Plaintiff's mental impairment, because there were no ambiguities or conflicts to be resolved, and the ALJ did not find the record was inadequate for a disability determination.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is **DENIED**; and

2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Debra S. Hampton.

IT IS SO ORDERED.

Dated:   **May 6, 2011**                                                   /s/ Jennifer L. Thurston
                                                            UNITED STATES MAGISTRATE JUDGE